The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pfeiffer. The appealing party has shown good grounds to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 *********** EVIDENTIARY RULING
The Deputy Commissioner admitted plaintiff's exhibits one through four. These exhibits consist of the following: (1) plaintiff's medical records; (2) a statement of total wages earned by plaintiff for the period 28 April 2000 through 25 May 2000; (3) two pages of photographs; and (4) an affidavit of service compiled by counsel for plaintiff.
 ***********
Based upon the evidence of record, the Full Commission finds as fact the following
 FINDINGS OF FACT
1. Plaintiff is a high school graduate whose primary type of employment since graduating from high school has consisted of construction work.
2. Plaintiff was acquainted with defendant Paul Wilson (hereinafter Wilson) because previously they had worked together for a construction company called Triad Builders. After Wilson stopped working for Triad Builders, he began doing contract work whereby building contractors would approach him for performance of certain jobs. When Wilson was requested to perform a job, he would then ask men, including plaintiff, to assist him with the job. Plaintiff worked with Wilson on these jobs as a carpenter/helper. There were usually three or four other men in addition to plaintiff who worked for Wilson on the various jobs. Plaintiff began working for Wilson in January 2000.
3. When the men worked for Wilson, they only worked Mondays through Fridays. It is not clear from the evidence presented whether the men had set working hours or came and went as necessary. The men were generally paid on Fridays during weeks they worked with Wilson pursuant to their agreement with Wilson regarding their wages.
4. Wilson himself was paid on a weekly basis by the person or general contractor who had hired him to do the particular job. Wilson usually was paid by check, which he cashed. Wilson then paid the men out of the money he had received, depending on their agreement with respect to hourly rates and hours worked. Wilson paid the men, including plaintiff, in cash.
5. In January 2000 plaintiff earned $7.50 per hour. However, plaintiff received a raise and was earning $8.00 per hour on 27 May 2000, the date he was injured. Plaintiff worked 30 hours per week in May 2000 and earned a total of $1,072.00 that month but indicated that he averaged between 30 and 40 hours per week generally. There is no evidence of record regarding the actual daily hours plaintiff worked for Wilson and whether these were set, regular hours.
6. Although plaintiff provided his own hand tools for use in the jobs with Wilson, Wilson supplied the power tools.
7. On one occasion, Ernest Fretwell hired Wilson to perform work for him, and at the same time Fretwell hired plaintiff, individually, to do some punch-list work. Plaintiff performed this work and was paid by Mr. Fretwell, not by Wilson.
8. However, on this occasion, Wilson worked out a barter arrangement with a man named Willis Stancil for which he would perform roofing work in exchange for a camper that Mr. Stancil had for sale. Wilson planned to do this work on Saturday 27 May 2000. Wilson, needing assistance, contacted plaintiff who agreed to assist Wilson on that day for pay. Mr. Stancil did not contact or hire plaintiff. Plaintiff was the only person other than Wilson who worked on Mr. Stancil's roof on 27 May 2000. Wilson paid plaintiff $72.00 by check for this day of work.
9. The work on Mr. Stancil's roof that was arranged by Mr. Stancil and Wilson was part of the construction laborer business in which Wilson was generally engaged on an ongoing basis since January 2000. Plaintiff's work on Mr. Stancil's roof was within his normal job duties as a construction laborer as he usually performed labor such as sweeping the roof at the direction of his employer, Wilson. The fact that plaintiff did not usually work on Saturdays is not determinative of whether plaintiff was acting as an employee of Wilson or whether the work performed on 27 May 2000 was a part of the construction laborer business in which Wilson was engaged or a separate, distinct one time arrangement.
10. While sweeping the roof on 27 May 2000, plaintiff's foot slipped on loose granules and he fell injuring his left leg. Plaintiff was taken by ambulance to Cape Fear Memorial Hospital where x-rays were taken and he was treated for nondisplaced fracture of his left proximal fibula or left leg. Four days later plaintiff was seen by Dr. Richard S. Bahner at Coastal Orthopaedics where he was given crutches and medication. He was advised to gradually increase weight-bearing and return to normal activities as he heals except that he should not climb for at least 4 to 6 weeks.
11. As a result of his injury, plaintiff was out of work from 28 May 2000 through 26 July 2000. Plaintiff returned to work on 27 July 2000 on a part-time basis at a grocery store, earning $7.00 per hour. Plaintiff's hours varied and he worked as much as 40 hours or as little as 30 hours per week. On 30 October 2000, plaintiff began a full-time job at a hardware store, where he earns $7.00 per hour.
12. Plaintiff suffered an injury by accident in the course and scope of his employment with defendant-employer on 27 May 2000. Plaintiff was engaged in duties that he performed in the course of his employment with defendant-employer and defendant-employer, which employed three or more employees, was performing the type of business in which it normally engaged. Furthermore, plaintiff was not a casual employee of defendant-employer and was employed on a regular basis during which defendant-employer exercised control over plaintiff's work, paid plaintiff at an hourly rate, supplied power tools for him to perform work and otherwise acted as plaintiff's employer for purposes of the Act.
13. Plaintiff had not been employed by defendant-employer for a period of 52 weeks at the time of his injury by accident and there is no evidence of record concerning the wages of a similarly situated employee. The only evidence of record regarding plaintiff's average weekly wage is a statement of his earnings for May 2000 in the amount of $1,072.00 and plaintiff's testimony that he worked between 30 and 40 hours beginning at $7.50 and thereafter at $8.00. Considering results fair and just to both parties, the average weekly wage which will most nearly approximate the amount which plaintiff would be earning were it not for the injury is $271.25, which yields a weekly compensation rate of $180.92. This figure takes into account plaintiff's May 2000 earnings as well as the average of plaintiff's hourly wages before and after his raise and the average number of hours per week plaintiff worked.
14. Plaintiff was incapable of earning the same or greater wages in any employment from 28 May 2000 through 26 July 2000 as a result of his injury by accident.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. Regardless of the fact that plaintiff's injury occurred on a Saturday or the fact that Wilson made a barter agreement with Mr. Stancil for the roofing job, plaintiff was performing duties within the course and scope of his regular employment with defendant-employer Wilson and he was not merely a casual employee. Furthermore, on Saturday 27 May 2000, the work performed was in the regular course of defendant-employer Wilson's ongoing construction laborer work. N.C. Gen. Stat. § 97-2(2).
2. Plaintiff was a regular employee of defendant-employer within the meaning of the North Carolina Workers' Compensation Act and defendant-employer employed three or more employees at the time of plaintiff's injury by accident on 27 May 2000. Therefore, the parties are subject to and bound by the provisions of the Workers' Compensation Act. N.C. Gen. Stat. § 97-2(2).
3. Plaintiff sustained an injury by accident within the course and scope of his employment with defendant-employer when he fell from the roof resulting in a fracture to his left leg on 27 May 2000. N.C. Gen. Stat. § 97-2(6).
4. Using the method that will most nearly approximate the amount which plaintiff would be earning were it not for the injury and considering results fair and just to both parties, plaintiff's average weekly wage is $271.25 yielding a weekly compensation rate of $180.92. N.C. Gen. Stat. § 97-2(5).
5. As a result of his injury by accident, plaintiff is entitled to temporary total disability benefits from 28 May 2000 through 26 July 2000 at a weekly compensation rate of $180.92, subject to a reasonable attorney's fee. N.C. Gen. Stat. § 97-2(5).
6. Although plaintiff returned to work at a lower hourly wage on 27 July 2000, there is insufficient evidence of record to show that any reduction in plaintiff's earning capacity is related to his injury by accident. Therefore, plaintiff is not entitled to temporary partial disability benefits. N.C. Gen. Stat. § 97-30.
7. There is insufficient evidence of record as to whether plaintiff retains any permanent partial disability as a result of his injury by accident. N.C. Gen. Stat. § 97-31.
8. Subject to the limitations of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to payment of all reasonably necessary medical expenses incurred or to be incurred as a result of his injury by accident for so long as such expenses are for treatment which tends to effect a cure, provide relief or lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Defendant shall pay plaintiff temporary total disability benefits from 28 May 2000 through 26 July 2000 at a weekly compensation rate of $180.92, subject to a reasonable attorney's fee awarded herein. This amount has accrued and shall be paid in one lump sum.
2. The issue of plaintiff's entitlement to permanent partial disability is hereby reserved.
3. An attorney's fee in the amount of 25% of the compensation due plaintiff is hereby approved for plaintiff's attorney and shall be deducted from the lump sum and paid directly to plaintiff's attorney.
4. Subject to the limitations of N.C. Gen. Stat. § 97-25.1, defendant shall pay for all reasonably necessary medical expenses incurred or to be incurred by plaintiff as a result of his injury by accident for so long as such expenses are for treatment which tends to effect a cure, provide relief or lessen plaintiff's period of disability.
5. Defendant shall bear its own costs.
This the ___ day of November 2001.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER